UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KRISTINE M. YOUNG,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>LABORATORY CORPORATION OF AMERICA et al.,<br><br>　　　　　　　Defendants. | CASE NO. 3:23-cv-05892-DGE<br><br>ORDER ON MOTION TO REMAND (DKT. NO. 15) |

　　　This matter comes before the Court on Plaintiff's motion to remand this case to the Pierce County Superior Court. (Dkt. No. 15.) Defendants oppose Plaintiff's motion (Dkt. No. 18) and have filed a motion to dismiss Plaintiff's complaint. (Dkt. No. 17.)

　　　Having considered Plaintiff's motion, Defendants' response, the exhibits and declarations attached thereto, and the remainder of the record, the Court GRANTS Plaintiff's motion and REMANDS this case to the Pierce County Superior Court. Defendants' motion to dismiss is DENIED as moot.

ORDER ON MOTION TO REMAND (DKT. NO. 15) - 1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a putative class action complaint filed by Plaintiff Kristine M. Young in the Pierce County Superior Court on August 29, 2023. (Dkt. No. 1-2.) Plaintiff, a resident of Washington State, is an hourly employee of Laboratory Corporation of America ("Labcorp"). (*Id.* at 2.) Plaintiff filed suit against Labcorp and two individual defendants, Heather D. Bellamy and Breanne E. Washington, alleging Defendants failed to provide compliant meal and rest periods, failed to pay overtime, and willfully withheld wages. (*Id.* at 6–12.) Plaintiff alleges violations of several Washington statutes, including the Washington Industrial Welfare Act ("IWA"), the Minimum Wage Act ("MWA"), the Wage Payment Act ("WPA"), and the Wage Rebate Act ("WRA"). (*Id.*)

On October 2, 2023, Defendants filed a notice of removal with this Court. (Dkt. No. 1.) In the notice of removal, Defendants contend the Court has diversity jurisdiction over this case. (*Id.* at 11–19.) Defendants also contend the Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). (*Id.* at 3–10.) On October 12, 2023, Plaintiff filed the instant motion to remand this case to the Pierce County Superior Court, arguing this Court lacks diversity or CAFA jurisdiction. (Dkt. No. 15.) On October 24, 2023, Defendants filed a motion to dismiss Plaintiff's complaint. (Dkt. No. 17.)

## II. LEGAL STANDARD

### A. Diversity Jurisdiction

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005); *see* 28 U.S.C. § 1441(a).

One such basis for removal is diversity jurisdiction, which exists if the suit is brought between citizens of different states and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a)(1). It is a "longstanding, near-canonical rule that the burden on removal rests with the removing defendant." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). Furthermore, "[courts] strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109 (1941).

**B. CAFA Jurisdiction**

In 2005, Congress passed the Class Action Fairness Act, which "significantly expanded federal jurisdiction in diversity class actions." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010). Congress enacted CAFA to facilitate adjudication of certain class actions in federal court, specifically "interstate cases of national importance." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

CAFA provides federal district courts with original jurisdiction to hear a class action if (1) the class has more than 100 members, (2) the parties are minimally diverse, and (3) the matter in controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B).

Unlike removal based on diversity jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. When a plaintiff contests a defendant's assertion of the amount in controversy, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied. *Id.* at 88–89 (citing 28 U.S.C. § 1446(c)(2)(B)).

### III. DISCUSSION

Plaintiff argues the Court does not have diversity jurisdiction over this case because Plaintiff and defendants Bellamy and Washington are citizens of Washington State. (Dkt. No. 15 at 15–16.) Plaintiff further argues Defendants have implausibly overstated the amount in controversy for purposes of diversity jurisdiction. (*Id.* at 16–17.) With respect to jurisdiction under CAFA, Plaintiff does not dispute minimal diversity or the existence of at least 100 members of the proposed class. (*Id.* at 9.) However, Plaintiff disputes Defendants' "implausible and factually unsupportable representations" concerning the amount in controversy. (*Id.*)

Defendants contend they have made reasonable assumptions in calculating the amounts in controversy for purposes of diversity and CAFA jurisdiction. (Dkt. No. 18 at 1.) Defendants argue Plaintiff fraudulently joined defendants Bellamy and Washington to prevent removal of this case to federal court. (*Id.* at 18–21.)

**A. Diversity Jurisdiction**

    1. <u>Amount in Controversy</u>

The removing defendant bears the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement. *Abrego Abrego*, 443 F.3d at 682–683. Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Id.* at 683. Conclusory allegations by the defendant will not suffice to overcome the traditional presumption against removal jurisdiction. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

When the amount in controversy is not facially apparent from the complaint, the court may consider facts in the removal petition in determining whether the amount in controversy

exceeds the jurisdictional minimum. *Id.* Courts may also consider any summary-judgement-type evidence relevant to the amount in controversy at the time of removal. *Id.* (internal citation omitted).

In cases involving diversity jurisdiction, the jurisdictional minimum may be satisfied by claims of general and specific damages, attorney fees when authorized by an underlying statute, and by punitive damages. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001); *Gait G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–1156 (9th Cir. 1998).

While Plaintiff's complaint does not include a specific figure with respect to damages, Defendants' notice of removal nevertheless alleges the amount in controversy exceeds $75,000. Defendants' calculation of the amount in controversy for purposes of diversity jurisdiction is based on several assumptions:

- Plaintiff Young has been employed as a PST Specialist by Pathology Associates Medical Laboratories, LLC, a Labcorp affiliate, since October 11, 2021;
- Plaintiff's hourly wage in this position was $21.26 and she worked an average of 46.09[1] hours per week;
- Between March 27, 2022 and August 29, 2023, Plaintiff worked 624.6513 overtime hours;
- Plaintiff's overtime rate during the relevant period was $31.89.

(Dkt. No. 1 at 16–19.)

---

[1] Defendant also asserted Plaintiff worked 46.06 hours per week rather than 46.09 hours. (*See* Dkt. No. 1 at 17, n.8.)

ORDER ON MOTION TO REMAND (DKT. NO. 15) - 5

Based on these and other assumptions, Defendants contend the amount in controversy for purposes of diversity jurisdiction is **$122,831**.[2] (Dkt. No. 1 at 16.) Defendants arrived at this figure in the following way:

- **Rest Breaks** – Plaintiff was entitled to total of 1,181.86 paid rest breaks over the course of her employment. Defendants reached this figure by dividing the average number of hours Plaintiff worked per week, 46.09, by 4, and then multiplying this by the number of weeks worked (102.57) between Plaintiff's start date and September 29, 2023. Defendants contend the missed rest breaks represent additional time worked and would be compensable at the overtime rate of $31.89 per hour because Plaintiff worked, on average, over 40 hours per week. Defendants then divide $31.89 by 6 to account for each 10 minute rest break, resulting in a figure of $5.315. Multiplying this figure by the amount of rest breaks (1,181.86) results in a figure of **$6,290.24** for unpaid rest break time.[3]

---

[2] In their response to Plaintiff's motion to remand, Defendants assert the amount in controversy is actually higher. Defendants contend the proper figure is **$152,160.44**. (Dkt. No. 18 at 21–24.) This figure is based principally on a revised estimate of Plaintiff's overtime hours, but also different calculations concerning rest and meal breaks. (*Id.* at 22.) Defendants arrived at this figure by including a new estimate of the amount of overtime worked by Plaintiff between March 28, 2022 and either August 29, 2023 or September 29, 2023. *Compare* Dkt. No. 22 at 2 (citing August 29th date) with Dkt. No. 18 at 22 (citing September 29th date). Defendants now contend Plaintiff worked 832 overtime hours during this period. (Dkt. Nos. 18 at 22; 22 at 2.) Applying this data to the time period between October 11, 2021 and March 26, 2022 adds an additional 252 hours, for a total of 1,084 overtime hours. (Dkt. No. 18 at 22.)

[3] The Court's calculation results in a figure of $6,281.58. There are several disparities between the figures cited in Defendants' notice of removal and the figure reached when the Court performed its own calculations. This appears to be the result of Defendants rounding off certain input numbers before they did their calculations. (*See e.g.* Dkt. No. 1 at 8.) ("employees worked an average of 88.73 weeks...they are each entitled to 10 rest breaks per week, for an average of 887.26 rest breaks…"). The burden is on Defendants to establish, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional minimum, with respect to both diversity and CAFA jurisdiction. As such, the Court will note these disparities, but will not

- **Meal Breaks** – Plaintiff was entitled to 5 meal breaks per week, based on her working a minimum of 40 hours per week. Multiplying 5 by the number of weeks Plaintiff worked during the relevant period (102.57), Plaintiff was entitled to 512.86[4] meal periods during the relevant period. Multiplying this figure by the overtime rate, $31.89 per hour, and 0.5 (to account for each 30 minute meal period) results in a figure of **$8,177.55**.

- **Overtime** – Plaintiff worked an average of 6.09 hours of overtime every week during her 102.57 weeks of employment at Labcorp, for a total of 624.6513 overtime hours during the relevant period. Multiplying this number by the overtime rate, $31.89, results in uncompensated overtime of **$19,918**.[5]

- **Double Damages** – Plaintiff seeks double damages pursuant to Revised Code of Washington 49.52.050, which permits an employee to recover twice the amount of the wages willfully withheld. Defendants contend this results in a figure of **$34,376**.[6]

- **Attorney Fees** – Defendants contend the current fee of Plaintiff's counsel is $465 per hour. Defendants calculate this based on the rate charged by Plaintiff's counsel in previous cases, with Plaintiff's counsel billing at a rate of $395 per hour in 2021. Defendants assumed an annual rate increase of $40 per year. Defendants cite a

---

re-calculate the amount in controversy. The Court will instead rely upon the final figures cited by Defendants in the notice of removal. The revised figures would not, in any event, result in an amount in controversy above the jurisdictional minimum with respect to either diversity or CAFA jurisdiction.

[4] The Court calculates this as 512.85, which results in a figure of $8,177.39.

[5] The Court arrives at a figure of $19,920.12.

[6] Adding together the figures arrived at by the Court ($6,281.60 + $8,177.39 + $19,920.12) results in a figure of $34,379.11.

ORDER ON MOTION TO REMAND (DKT. NO. 15) - 7

previous wage and hour action with an individual plaintiff in which Plaintiff's counsel billed for 81.5 hours of work. Defendants argue the present action names two individual defendants, which will require at least two additional depositions, bringing the likely amount of billable hours in this case to 116.3. Multiplying this number by $465 results in attorney fees of **$54,079.50**.

The basic assumption underlying many of Defendants' calculations is that Plaintiff received *none* of the rest breaks, meals breaks, or overtime payments to which she is entitled under Washington law. Defendants' calculations make no allowance for the possibility that Plaintiff received at least *some* of the rest breaks, meal breaks, and overtime payments to which she was entitled.

Plaintiff's complaint does not state an amount in controversy. Nor does the complaint indicate how often Defendants violated the Washington statutes at issue, either with respect to Plaintiff or members of the putative class action. The complaint merely alleges Defendants violated Washington law "at times." The phrase appears six times in Plaintiff's complaint. (Dkt. No. 1-2 at 3, 4, 6.)

Plaintiff's complaint cannot reasonably be construed to allege Defendants *never* complied with Washington law with respect to rest breaks, meal breaks, and overtime payments. The phrase "at times" is vague, perhaps deliberately so.

Nevertheless, it cannot reasonably be interpreted to mean Defendants violated the relevant Washington statutes all the time. Assuming a 100% violation rate might be appropriate if Plaintiff's complaint alleged universal deprivation of rest breaks, meal breaks, or overtime payments or did not otherwise qualify her allegations. *See e.g., Sanchez v. Russell Sigler, Inc.*, Case No. CV 15–01350–AB (PLAx), 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015).

However, in the context of wage violations, phrases like "at times" generally imply the illegal practices in question did not happen consistently. *See e.g., Brown v. Janus of Santa Cruz*, Case No. 21–CV–00094–BLF, 2021 WL 3413349, at *7 (N.D. Cal. Aug. 5, 2021). Even in cases where the complaint alleges a defendant engaged in a "common course of conduct" and intentionally adopted policies and practices that violated the law, these passing comments do not necessarily dilute a complaint's "overarching allegations of sporadic and intermittent practices." *Moore v. Dnata Inflight Catering LLC*, Case No. 20–cv–08028–JD, 2021 WL 3033577 at *2 (N.D. Cal. July 19, 2021); *see also Duran v. Allegis Global Solutions, Inc.*, Case No. 20–cv–09025–JD, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021).

Even if Plaintiff's complaint alleged a "pattern and practice" of labor law violations, which it does not, this would not necessarily imply Defendants *always* violated the law. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (a complaint alleging a "pattern and practice" of labor law violations did not necessarily imply the pattern and practice was universally followed every time the wage and hour violation could arise.)

Accordingly, Defendants have failed to establish, by a preponderance of the evidence, that the amount in controversy is consistent with their calculations with respect to meal breaks, rest breaks, and overtime. In the alternative, Defendants ask the Court to assume they violated the relevant Washington statutes 60% of the time for purposes of determining diversity jurisdiction. (Dkt. No. 18 at 12–14.) In her reply, Plaintiff suggests a 20% violation rate is more appropriate. (Dkt. No. 23 at 2.)

Courts have reached different conclusions concerning what the phrase "at times" implies about precisely how often a defendant violated the law. Some courts have found a violation rate of 50% appropriate when the complaint contains the phrase "at times" or similar language. *See*

*e.g. Gallegos v. EC USA Holdings Inc.*, Case No. 2:16–CV–03511–SVW–SK, 2016 WL 8674592 at *8 (C.D. Cal. Oct. 7, 2016) (finding defendant's proposed 50% violation rate appropriate when plaintiff alleged she was prevented from taking rest breaks "at times"); *Oda v. Gucci Am., Inc.*, Case No. 2:14–cv–7468–SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate appropriate when the complaint alleged defendant "sometimes" violated labor laws, that "not all" rest periods were provided, and failed to pay "all" compensation due).

Other courts have found a 20% violation rate appropriate when the frequency of the violations was unclear from the complaint. *See e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, Case No. 19–CV–00719–NC, 2019 WL 1501576 at *3 (N.D. Cal. Apr. 5, 2019) (noting courts in the Ninth Circuit have applied a 20% violation rate for purposes of determining the amount in controversy where the plaintiff does not specify the frequency of the missed meal or rest periods); *Mendoza v. Savage Servs. Corp.*, Case No. 2:19–CV–00122–RGK–MAA, 2019 WL 1260629 at *2 (C.D. Cal. Mar. 19, 2019) (applying a 20% rate when a defendant's calculation lacked factual support).

Here, the Court finds a 20% violation rate to be reasonable based on the evidence presented. A 20% rate is broadly consistent with the "at times" language of the complaint, and Defendants have not submitted evidence that would justify a higher rate. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) (When the district court identifies a different, better assumption concerning the amount in controversy to the one advanced by the removing defendant, the court "should consider the claim under the better assumption.").

A higher violation rate might be appropriate if Plaintiff's complaint alleged a widespread or systematic pattern of violations, but for the reasons discussed above, the phrase "at times" cannot reasonably be construed this way. *See Alvarez v. Office Depot, Inc.*, Case No. CV 17–7220 PSG, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding a 60% or even 100% violation rate appropriate where a plaintiff alleged a "uniform practice" of meal and rest period violations); *Johnson v. Bamia 2 LLC*, Case No. 2:22–cv–00548–KJM–AC, 2022 WL 2901579, at *3 (E.D. Cal. 2022) (finding a violation rate of 40% reasonable when the complaint alleged plaintiff was "regularly denied" legally compliant breaks and was "often" or "routinely" unable to take compliant breaks due to defendants' "uniform policies/practices").

Applying a 20% violation rate to Plaintiff's claims regarding rest breaks, meal breaks, and overtime results in a figure of $6,875.20. Doubling this figure pursuant to Revised Code of Washington 49.52.050 leads to a damages figure of $13,750.40. Adding Defendants' attorney fee estimate to this, and assuming arguendo this estimate is reasonable, results in an overall amount in controversy of **$67,829.90.** Utilizing Defendants' revised calculations (Dkt. No. 18 at 21–23) and applying the same methodology results in a damages figure of $19,616.18. Adding Defendants' attorney fee estimate to this results in a figure of **$73,695.68**. In either case, the $75,000 jurisdictional minimum has not been satisfied.

### 2. Diversity of Citizenship

Removal based on diversity jurisdiction requires complete diversity, meaning each plaintiff must be of a different citizenship from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v.*

*Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal citation omitted). Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal citation omitted).

There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (internal citation omitted). Fraudulent joinder is established the second way if a defendant shows that individuals joined in the action "cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Hunter*, 582 F.3d at 1046 (internal citation omitted).

In the notice of removal, Defendants contend Plaintiff's complaint fails to establish a cause of action under the IWA and MWA against Bellamy and Washington because it lacks any specific allegations concerning how they violated the law as "employers" rather than as mere employees of Labcorp. (Dkt. No. 1 at 12.) Defendants contend Bellamy and Washington cannot be liable under the IWA and MWA because neither qualifies as an "employer" as that term is defined in the statutes. (*Id.* at 13–15.) Defendants contend Plaintiff does not state a cause of action against Bellamy and Washington under the WRA because her complaint fails to allege the

two individual defendants exercised control over the payment of wages at Labcorp or acted pursuant to that authority. (*Id.* at 15–16.)

### i. MWA

The MWA provides, in relevant part, that an "employer" includes "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." Wash. Rev. Code § 49.46.010(4).

The Washington MWA is based on the federal Fair Labor Standards Act ("FLSA"). *Stahl v. Delicor of Puget Sound, Inc.*, 64 P.3d 10, 14 (Wash. 2003). Because of this, Washington courts have found federal authority interpreting provisions of the FLSA "often provides helpful guidance" when interpreting analogous provisions of the MWA. *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000). However, the two statutes are not identical, and Washington courts are not bound by federal court decisions interpreting the FLSA. *Id.*

Defendants argue the Court should apply the "economic reality" test, which is used by the Ninth Circuit to determine whether a defendant qualifies as an "employer" for purposes of the FLSA. (Dkt. No. 1 at 114.) To determine whether an individual or entity is an "employer" under this test, courts consider whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Washington courts have applied this test when considering whether a defendant was an "employer" for purposes of the MWA. *Anfinson v. FedEx Ground Package Sys., Inc.*, 244 P.3d 32, 39–40 (Wash. Ct. App. 2010).

Congress did not intend for any supervisory or managerial employee of a corporation to be held personally liable for the unpaid wages of other employees under the FLSA. *Solis v. Velocity Exp., Inc.*, Case No. CV 09–864, 2010 WL 2990293, at *3 (D. Or. July 26, 2010) (internal citation omitted). Nevertheless, an individual may be considered an employer under the FLSA and personally liable for violations if he or she "exercises control over the nature and structure of the employment relationship," or "economic control over the relationship." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (internal citation omitted).

Plaintiff's complaint alleges Bellamy is a citizen of Washington State and was, at all relevant times, "an officer, vice-principal or agent of Labcorp and had apparent and/or actual, direct or indirect authority over employment matters, including the payment of wages." (Dkt. No. 1-2 at 2.) The complaint alleges Bellamy is an "employer" for purposes of the IWA, MWA, WPA, and WRA. (*Id.*) The complaint makes identical allegations concerning defendant Washington. (*Id.*)

Defendants' burden with respect to establishing fraudulent joinder is high, and they have not met it here. Individual defendants can be personally liable for MWA violations under certain circumstances. While Plaintiff has not plead facts concerning the extent of Bellamy and Washington's control over the employment relationship, she need not do so to avoid a finding that these two defendants were fraudulently joined.

The test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. *GranCare*, 889 F.3d at 549. Even if a claim against a defendant may fail under Rule 12(b)(6), that defendant has not necessarily been fraudulently joined. *Id.* The appropriate inquiry is whether there is a *possibility* that a state court would find the complaint states a cause of action against any of the non-diverse defendants. *Id.*

"Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id; Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989) ("A patently insubstantial complaint may be dismissed . . . for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."); *Hagans v. Lavine*, 415 U.S. 528, 536–537, (1974) (federal courts lack power to entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit.") (citations omitted).

Plaintiff has alleged Bellamy and Washington were "employers" for purposes of the MWA, and there is a possibility, especially given Washington State's liberal pleading standards, that a state court could find Plaintiff's complaint states a cause of action against them. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 281 (Wash. 2006) (Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought.) To the extent Defendants contend Plaintiff did not plead her claims with sufficient particularity, this argument goes to the sufficiency of the complaint rather than the possible viability of Plaintiff's claims. *GranCare*, 889 F.3d at 552.

Accordingly, the Court cannot find defendants Bellamy and Washington were fraudulently joined to this action for purposes of the MWA.

      ii.  <u>IWA</u>

The IWA defines an "employer" as "any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees." Wash. Rev. Code § 49.12.005(3)(b).

Defendants cite a single, unpublished state court decision for the proposition that individual defendants such as Bellamy and Washington cannot be liable for violations of the IWA. *Ramirez v. Precision Drywall, Inc.*, Case No. 65453–5–I, 2011 WL 5147660, at *4–*5, 164 Wash App. 1031 (Wash. Ct. App. 2011). However, even this decision acknowledges the IWA's definition of employer "does not preclude an individual from being held liable for violations of the IWA where that individual engages in business and employs employees." *Id.* at *4.

Plaintiff has alleged Bellamy and Washington are employers for purposes of the IWA and it is possible, albeit unlikely, that a state court could find Plaintiff's complaint states a cause of action against them, particularly since there is at least one theory under which Bellamy and Washington could be liable. *Ritchey*, 139 F.3d at 1318.

      iii.  <u>WRA</u>

The WRA applies to any "employer or officer, vice principal or agent of any employer" that "[w]ilfully and with intent to deprive the employee" pays the employee "a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." Wash. Rev. Code §§ 49.52.070, 49.52.050(2).

For individual liability under the WRA, a finding that the individual in question is managing the employer's business is insufficient. *Ellerman v. Centerpoint Prepress, Inc.*, 22 P.3d 795, 799 (Wash. 2001). Under the WRA, an individual cannot be said to have willfully withheld wages unless he or she "exercised control over the direct payment of the funds and acted pursuant to that authority." *Id.* To find otherwise "could result in substantial unfairness by imposing personal liability on managers or supervisors who had no direct control over the payment of wages." *Id.*

ORDER ON MOTION TO REMAND (DKT. NO. 15) - 16

Plaintiff's complaint alleges Bellamy and Washington were officers, vice-principals, or agents of Labcorp and had "apparent and/or actual, direct or indirect authority over employment matters, including the payment of wages." (Dkt. No. 1-2 at 2.) While Plaintiff's allegations are conclusory at this stage, it is possible a Washington court could find Plaintiff's complaint states a cause of action with respect to the WRA.

Accordingly, the Court cannot find defendants Bellamy or Washington were fraudulently joined with respect to any of the causes of action raised in Defendants' notice of removal.

### B. CAFA Jurisdiction

Plaintiff's complaint does not include a specific figure with respect to amount in controversy under CAFA. Nevertheless, Defendants' notice of removal alleges the amount in controversy exceeds $5,000,000. Defendants' calculation of the amount in controversy for purposes of CAFA jurisdiction is based on several assumptions:

- The putative class includes 242 individuals who: (i) are or were employed in a Labcorp facility, (ii) in Washington State, (iii) in positions paid on an hourly basis, (iv) from August 29, 2020 to present;
- The 242 Labcorp employees worked an average of 88.73 weeks at Labcorp at an average rate of $23.92 per hour;
- The employees worked 8 hours per day, 5 days a week.

(Dkt. No. 1 at 5–11.)

Based on these assumptions, Defendants contend the amount in controversy for purposes of CAFA jurisdiction is **$7,343,646.60.** Defendants arrived at this figure in the following way:

- **Rest Breaks** – The putative class members were each entitled to 10 rest breaks per week, for an average of 887.26 rest breaks per person between August 29, 2020 and

ORDER ON MOTION TO REMAND (DKT. NO. 15) - 17

October 2, 2023.  Multiplying 887.26 by the number of class members (242), the average pay rate ($23.92) and 0.167 results in a figure of **$856,173.94**.[7]

- **Meal Breaks** – The 242 employees forming the putative class were entitled to 5 meal periods per week, for an average of 443.63 meal periods per person between August 29, 2020 and October 2, 2023.  Multiplying 443.63 by the number of putative class members (242), the average pay rate ($23.92), and 0.5 results in a figure of **$1,284,260.91.**[8]

- **Overtime** – At least 43 of the 242 employees worked, on average, over 40 hours per week and were entitled to overtime.  These employees worked, on average, 45.82 hours per week.  During the relevant period, each employee worked at least 516.41 hours of overtime at an average overtime rate of $35.89.  Multiplying the number of overtime hours (516.41) by the number of employees (43) and the average overtime rate ($35.89) results in total overtime wages of **$797,023.79.**[9]

- **Double Damages** – Plaintiff seeks double damages pursuant to Revised Code of Washington 49.52.050, which permits an employee to recover twice the amount of the wages willfully withheld.  Defendants contend this results in a figure of **$2,937,458.64.**

- **Attorney Fees** – Defendants seek to apply a 25% percent benchmark for attorney fees.  25% of the amount in controversy proposed by Defendants is **$1,468,729.32.**

---

[7] Using the rounded numbers cited in Defendants' removal petition, the Court arrives at a figure of $857,716.79.  An independent calculation, using a more accurate number than the rounded 0.167, results in a figure of $856,004.79.

[8] Using these numbers, the Court arrives at a figure of $1,284,007.18.

[9] The Court arrives at a figure of $796,960.06.

ORDER ON MOTION TO REMAND (DKT. NO. 15) - 18

(*Id.*)

The assumption underlying Defendants' calculations with respect to amount in controversy for purposes of CAFA is that the putative class members received none of the rest breaks, meals breaks, or overtime payments to which they were entitled under Washington law. This is the same assumption underlying Defendants' estimate of the amount in controversy for purposes of diversity jurisdiction.

The assumption is unreasonable for the same reason: Plaintiff's complaint does not allege the putative class members *never* received the rest breaks, meals breaks, or overtime payments to which they were entitled. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (Assumptions regarding the amount in controversy for purposes of determining CAFA jurisdiction may be reasonable if "founded on the allegations of the complaint" and must have "some reasonable ground underlying them.") (internal quotation omitted); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones.") (citation omitted).

For the reasons discussed above, the Court finds it appropriate to assume a 20% violation rate for purposes of determining CAFA jurisdiction. Doing so results in a damages figure of $1,174,983.45. Assuming arguendo that it is appropriate to apply a 25% benchmark for attorney fees, this results in an attorney fee award of $293,745.86. Added together, this results in an amount in controversy of **$1,468,729.31**, which is well below CAFA's jurisdictional minimum. Accordingly, Defendants have not established, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

### C. Attorney Fees

Plaintiff seeks attorney fees and costs incurred in filing her motion to remand pursuant to 28 U.S.C. § 1447(c). (Dkt. No. 15 at 17–18.) Under § 1447(c), an order remanding a case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

Absent unusual circumstances, courts generally only award fees under 28 U.S.C. § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal. *Martin*, 546 U.S. at 141. Here, Defendants have shown they had an objectively reasonable basis for seeking removal.

## IV. ORDER

Plaintiff's motion to remand this case to the Pierce County Superior Court (Dkt. No. 15) is GRANTED. Defendants' motion to dismiss (Dkt. No. 17) is DENIED as moot.

Dated this 20th day of February, 2024.



David G. Estudillo
United States District Judge